### A09A0383. ROBERTS v. THE STATE.

(678 SE2d 137)

MIKELL, Judge.

After a jury trial, Benjamin Roberts was convicted of two counts of child molestation, two counts of aggravated child molestation, aggravated sodomy, and possession of cocaine. On appeal, Roberts challenges the sufficiency of the evidence as to his convictions on the sexual offenses. Roberts also argues that the trial court erred when it failed to excuse a juror and when it corrected its charge to the jury on aggravated child molestation. Finding no error, we affirm.

> On appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence. This Court does not weigh the evidence or determine witness credibility, but only determines whether the evidence, viewed in the light most favorable to the jury's verdict, is sufficient under *Jackson v. Virginia*.[1] We uphold the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[2]

So viewed, the record shows that K. J., who was 11 years old at the time of trial, testified that Roberts was her stepgrandfather. At the time in question, she visited Roberts' house every other weekend to play with her half-brother, A. J., and E.,[3] her sister.[4] K. J. testified that after a Halloween party on October 30, 2004, Roberts put his hand under her clothes and touched her chest and touched her vagina by putting his hand on the outside of her panties while A. J.

---

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[2] (Footnotes omitted.) *Nguyen v. State*, 294 Ga. App. 67-68 (668 SE2d 514) (2008).

[3] E. was referred to by her first name only in the record.

[4] K. J.'s father, Bill Johnson, was married to Elizabeth Roberts Johnson. A. J. was their son, and E. was Elizabeth's daughter from a previous relationship.

and E. slept. Roberts told her that he would harm her little sister if she told anyone about what happened.

K. J. testified that as she continued to go to Roberts' home to play with her siblings, the abuse progressively worsened; that she had seen Roberts' private part several times; that he made her kiss his penis; that he kissed her private part several times; and that he tried to put his penis in her bottom. K. J. further testified that the first person that she told about the incident was her stepmother, Elizabeth, who was also Roberts' daughter, and that Elizabeth cried and confronted her father, who denied the allegation. Six months later, K. J. told her mother, Chastity Johnson, about the abuse.

Johnson recalled that at the end of the summer in 2005, K. J. told her that she had been molested by Roberts. Johnson testified that K. J. was living with her father when the incidents occurred because Johnson was in an abusive relationship. Johnson testified that she confronted K. J.'s father and Elizabeth about the incident and was told they would handle it. After they did nothing, Johnson reported the crime to the sheriff's office on October 24, 2005. Johnson testified that K. J. gave a statement at the sheriff's office and traveled to Albany for a physical examination wherein she was interviewed by Sean Edgar, a Georgia Bureau of Investigation special agent.

Edgar testified that he interviewed K. J. on October 25 using anatomical drawings of a male and female. K. J. told him that Roberts had touched her chest, her vagina, and her bottom, and she explained to him how and when the molestation began. She told Edgar that Roberts had ejaculated on her vagina and her thighs and made her drink his semen. K. J. told Edgar that the abuse stopped in July or August 2005. Edgar testified that the interview was recorded and the video recording was played for the jury.

Rinne Tetrault, a sexual assault nurse examiner who was qualified as an expert witness at trial, examined K. J. on November 8, 2005. Tetrault testified that K. J.'s hymen was very thin and that girls who are prepubescent usually have a thicker hymen; that K. J. had a healed vaginal tear and a healed anal tear; and that K. J.'s injuries were consistent with a history of anal and vaginal sexual abuse. On cross-examination, Tetrault admitted that it was not possible to assign a date to K. J.'s injuries and that she could not say what or who caused the injuries.

1. In his first enumerated error, Roberts challenges the sufficiency of the evidence as to his convictions for child molestation,[5]

---

[5] "A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the

aggravated child molestation,[6] and aggravated sodomy,[7] arguing that K. J.'s testimony was not credible because she was a troubled child and her family was dysfunctional. Assessing the credibility of a witness is within the province of the factfinder, not this Court.[8] Here, in addition to the victim's testimony that Roberts had engaged in sexual intercourse and sodomy with her, there was physical evidence that supported K. J.'s testimony that she had been abused. Because the jury was authorized to believe the testimony of the victim as well as the expert witness who testified on behalf of the state, this enumeration fails.[9]

2. Next, Roberts contends that the trial court erred when it failed to strike juror number 48, who was the secretary of another judge employed at the same courthouse. Roberts argues that the juror should have been excluded because she was too involved in the judicial process at this particular court. The juror testified that in her position, she sometimes knew when a case was on a trial calendar; that she met the alleged victim at the courthouse on the Friday before trial; and that she could be fair and impartial.

"[T]he decision to strike a juror for cause lies within the sound discretion of the trial court."[10] Thus, "[a] trial court's finding that a prospective juror is or is not disqualified, including the trial court's resolution of any equivocations or conflicts in the prospective juror's responses, is given deference by an appellate court."[11] Consequently, the trial court's determination regarding a juror's qualifications "will not be set aside absent some manifest abuse of its discretion."[12] Here, we find no manifest abuse of the trial court's discretion in refusing to strike for cause juror number 48.

We find this case distinguishable from *Beam v. State*,[13] which Roberts cites in his appellate brief. In that case, our Supreme Court

---

intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a).

[6] "A person commits the offense of aggravated child molestation when such person commits an offense of child molestation which act physically injures the child or involves an act of sodomy." OCGA § 16-6-4 (c).

[7] "A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person or when he or she commits sodomy with a person who is less than ten years of age." OCGA § 16-6-2 (a) (2). Sodomy occurs when a person performs or submits to any sexual act involving the sexual organs of one person and the mouth or anus of another person. See OCGA § 16-6-2 (a) (1).

[8] See *Odett v. State*, 273 Ga. 353, 354 (1) (541 SE2d 29) (2001).

[9] See generally *McKinney v. State*, 269 Ga. App. 12, 16 (2) (602 SE2d 904) (2004) (testimony of the victim, alone, is sufficient to authorize a guilty verdict).

[10] (Citation omitted.) *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993).

[11] (Footnote omitted.) *Pruitt v. State*, 270 Ga. 745, 750-751 (12) (514 SE2d 639) (1999).

[12] (Citation omitted.) *Stokes v. State*, 281 Ga. 825, 827 (2) (642 SE2d 82) (2007).

[13] 260 Ga. 784 (400 SE2d 327) (1991).

reversed a trial court for refusing to strike a juror who was a full-time secretary in the office of the district attorney.[14] The Court noted that "[i]t is inherent in the nature of the duties of employees of district attorneys and the closeness with which such employees are identified with criminal procedures that questions regarding possible bias, fairness, prejudice or impermissible influence upon jury deliberations inevitably arise."[15] The Court concluded that because the juror was an employee of the same district attorney who prosecuted the defendant, the juror's participation on the panel created a "substantial appearance of impropriety" and that "[t]he trial court should have stricken the juror to preserve public respect for the integrity of the judicial process."[16] Here, however, the juror was employed by a judge, not by a party to the case, and there was no evidence that the judge had any involvement in the instant case. The nature of the duties of an employee of a judge is antithetical to that of the district attorney's office. Judges are required to be impartial.[17] Because there was no evidence that juror number 48 was biased and unable to render a fair verdict, this enumerated error fails.

3. In his last enumeration of error, Roberts argues that the trial court erred when it instructed the jury a second time on the offense of aggravated child molestation. We find no error.

The court charged the jury that "[a] person commits the offense of aggravated child molestation when he does any immoral or indecent act involving an act of sodomy to or with any child under the age of 16 years with the intent to arouse the sexual desires of such person." In its exception to the charge, the state informed the trial court that it neglected to charge the jury on the specific element of injury to a child. Defense counsel objected on the grounds that re-charging the offense would place undue emphasis on the charge.

The trial judge decided to re-charge the jury on the offense. Defense counsel reserved his objection and requested that the court re-charge the jury on all of the charges to lessen the possibility of undue emphasis on the aggravated child molestation charge. The court refused and then re-charged the jury as follows:

> [I]t's been brought to my attention that I may have failed to adequately and accurately charge you on all of the offenses that were alleged in the indictment and my omission relates to Count III which is a count of aggravated child molesta-

---

[14] Id. at 785-786 (2).

[15] (Citation and punctuation omitted.) Id. at 785 (2).

[16] Id. at 786 (2).

[17] See Ga. Code of Judicial Conduct Canon 3 ("Judges shall perform the duties of judicial office impartially").

tion. And in that regard, I charge you with reference to Count Number III, that the definition of that offense is, a person commits the offense of aggravated child molestation when that person does an immoral or indecent act to a child less than 16 years of age with the intent to arouse or satisfy the sexual desires of said person, and the act involves physical injury to the child. . . . And in my failure to adequately charge you on Count III, you should not take the fact that I have done this as any inference or attempt to stress any — this re-charge any more than any of [sic] other charges that I have given you in this case. And it's not done for purposes of any emphasis or anything like that. You take it along with all of the other charges the Court has given you and consider them in the same light.

"As a general rule, the need, breadth, and formation of additional jury instructions are left to the sound discretion of the trial court."[18] We find no error where the trial court made a mistake, recognized the mistake, and then immediately corrected it by giving the charge in its correct form.[19]

Roberts argues that the trial judge should have re-charged the jury on all points of law. The question of whether to re-charge on a particular point of law or to re-charge entirely typically arises when the court is presented with a question from the jury. In those cases, "[i]t is not error to recharge only on the specific question so long as the recharge taken alone does not leave an erroneous impression in the minds of the jury."[20] We apply that principle here and find no error in the trial court's refusal to re-charge on all of the offenses where in its re-charge, it specifically informed the jury that it had made an error and that it was not placing emphasis on the offense that was re-charged, leaving no room for juror confusion or inference. Accordingly, we affirm Roberts' convictions.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 4, 2009.

*Billy M. Grantham*, for appellant.
*Joseph K. Mulholland, District Attorney*, for appellee.

---

[18] (Citation omitted.) *Spivey v. State*, 243 Ga. App. 785, 788 (3) (534 SE2d 498) (2000).
[19] See *Guess v. State*, 264 Ga. 335, 338 (7) (443 SE2d 477) (1994).
[20] (Citation omitted.) *Spivey*, supra.